IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CR-22-407-D |
| ) | |
| MARCO RAMON BUTTERFIELD, ) | |
| ) | |
| Defendant. ) | |

**FINDINGS OF FACT, CONCLUSIONS
OF LAW, AND ORDER**

Before the Court is Defendant Marco Ramon Butterfield's Motion to Suppress Statements During Custodial Interrogations Pursuant to *Jackson v. Denno*[1] [Doc. No. 17]. Defendant seeks to suppress the statements he made to Del City Police Department ("DCPD") officers on the evening of July 11, 2022, while questioned in a patrol vehicle, and later while questioned in an interview room at DCPD headquarters. The government filed a response opposing Defendant's motion, and the Court held an evidentiary hearing on the matter on February 6, 2023. *See* Pl.'s Resp. Br. [Doc. No. 20].

At the hearing, Defendant appeared personally with appointed counsel, Michael Noland; the government appeared through Assistant United States Attorney David Nichols, Jr. The Court received testimony from DCPD officers Blake Reichert, Aron Mares, and William Ray. Additionally, the parties submitted two exhibits into evidence: Defendant's executed *Miranda* rights waiver, and a video depicting Defendant's interview at DCPD

---

[1] *Jackson v. Denno*, 378 U.S. 368 (1964).


headquarters. Upon consideration of the evidence, the case record, and the parties' arguments, the Court rules as follows.

## Findings of Fact

The events in question stem from an encounter between Defendant Marco Butterfield and three DCPD officers: Blake Reichert, Aron Mares, and William Ray.[2] Officer Reichert has been with DCPD for approximately six years. On July 11, 2022, Officer Reichert was field training Officer Mares, who had been with DCPD between four and five months at the time. Conducting a routine patrol, Officer Reichert and Mares arrived at the Oakridge Village apartments[3] in their patrol vehicle around 9:30 p.m. Shortly after arriving, they began patrolling the apartment complex by foot. They were joined by Officer Colson, who had recently arrived in his own vehicle.

As they began patrolling, the officers noticed Defendant and another male, Drayvon Bowie, seated approximately twenty to twenty-five yards away. After Defendant and Mr. Bowie spotted the officers, they stood up and began walking in the opposite direction, while intermittently looking back toward the officers. The officers followed, and eventually ordered both men to stop walking. Both men complied and began conversing with the officers. The officers asked the men if they lived at the complex, and how they knew one another. While Officers Reichert and Mares conversed with the men, Officer Colson returned to the area that the men walked through. While walking through the area, Officer

---

[2] The parties also reference DCPD Officer Colson. Officer Colson did not testify, but was at the Oakridge Village apartments on the evening in question.
[3] The Oakridge Village apartments are located at the 3400 block of S. Bryant Ave. in Del City, Oklahoma.

Colson discovered a firearm. This discovery prompted the officers to separate the men and place them in different patrol vehicles.

Once Defendant was secured in a patrol vehicle, Officer Reichert read Defendant his *Miranda* rights from a card he accessed online. Defendant verbally waived his rights and agreed to speak with Officer Reichert. Officer Reichert began asking Defendant questions about his involvement with the firearm. Although Officer Reichert questioned Defendant about the firearm for several minutes, Defendant maintained that the firearm did not belong to him. Around that time, Officer Ray[4] arrived to provide the on-scene officers with assistance. Upon arriving, Officer Reichert suggested that Officer Ray discuss the firearm with Defendant. Officer Reichert informed Officer Ray that Defendant had been read his *Miranda* rights.

Initially, Defendant informed Officer Ray that the firearm did not belong to him. Officer Ray noticed Defendant had a tattoo that is commonly associated with a local gang, and asked Defendant about it. The two men began discussing the local struggle in the area between rival gangs and acknowledged recent gang-related shootings. Eventually, the conversation returned to the subject of the firearm, and Defendant admitted he was carrying the firearm that evening for protection. Defendant was subsequently arrested and transported to an interview room at DCPD headquarters.

Upon entering the interview room, Officer Reichert removed Defendant's handcuffs. Immediately thereafter, Officer Reichert provided Defendant with a form

---

[4] Officer Ray has been with DCPD since his certification in 2017.

3

advising him of his *Miranda* rights. Officer Reichert went over the form with Defendant, and Defendant initialed and executed the form after reading it. *See* [Doc. No. 20-1]. After doing so, Officer Reichert confirmed with Defendant that he understood the nature of the form he signed, and the rights he was waiving. Officer Reichert then questioned Defendant about the firearm for just under five minutes, and Defendant acknowledged that he had been in possession of the firearm.

### *Discussion*

Defendant argues that his incriminating statements must be suppressed because the government "cannot demonstrate that [his] statements were made voluntarily, or that he knowingly and voluntarily waived his *Miranda* rights." Def.'s Mot. to Suppress at 4. For the reasons set forth herein, the Court finds that Defendant's motion must be **DENIED.**

## I.   **Voluntariness of Incriminating Statements**

Upon timely request, a defendant is entitled to an evidentiary hearing outside the presence of a jury to determine the voluntariness of a confession. *See Jackson v. Denno*, 378 U.S. 368, 376-77 (1964). The government must prove that the statements were voluntary by a preponderance of the evidence. *See United States v. Williams*, 576 F.3d 1149, 1162 (10th Cir. 2009); *United States v. Pettigrew*, 468 F.3d 626, 633 (10th Cir. 2006).

"The voluntariness of a statement depends upon an assessment of 'the totality of all the surrounding circumstances' including 'both the characteristics of the accused and the details of the interrogation.'" *United States v. Cash*, 733 F.3d 1264, 1280 (10th Cir. 2013). (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). Relevant facts include

"(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to any physical punishment." *Cash*, 733 F.3d at 1280-81 (internal quotation omitted); *see Schneckloth*, 412 U.S. at 226; *see also Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004); *Williams*, 576 F.3d at 1162.

The critical question is whether Defendant's statements were freely made or whether his "will has been overborne and his capacity for self-determination critically impaired." *Schneckloth*, 412 U.S. at 225; *see United States v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006). Some coercive police activity is a necessary predicate to a finding that a confession was not voluntary. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *Cash*, 733 F.3d at 1281; *Smith v. Mullin*, 379 F.3d 919, 934 (2004).

After considering the testimony from Officers Reichert, Mares, and Ray, and reviewing the entirety of Defendant's recorded interview at DCPD headquarters, the Court finds that Defendant's oral statements concerning the offense were made voluntarily. Before being questioned in the patrol vehicle, Defendant was advised of his constitutional rights and consented to answering questions. The period of time during which Defendant was detained and questioned was brief, spanning less than one hour. *See Sharp v. Rohling*, 793 F.3d 1216, 1233 (10th Cir. 2015) (describing a five-hour detention period as "not unusually long"). In addition, nothing suggests that the line of questioning from the officers was threatening or physically coercive. Nor is there any indication that Defendant's cognitive abilities were impaired at the time he was questioned. Under the totality of the

circumstances, the Court finds that Defendant knowingly and voluntarily waived his *Miranda* rights, and that the statements made by Defendant in the patrol vehicle and at DCPD headquarters were freely and voluntarily made.

## II.   Effective *Miranda* Waiver

When a custodial statement is obtained without an attorney present, "a heavy burden rests on the government to demonstrate that the defendant knowingly and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona*, 348 U.S. 437, 475 (1966). However, the government's "burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of [the] *Miranda* doctrine . . . [is] only by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

> The inquiry into the validity of a *Miranda* waiver has two components:
>
> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citations omitted). The Tenth Circuit has also identified appropriate circumstances for consideration:

> In determining whether rights were voluntarily waived, we consider: the suspect's age, intelligence, and education; whether the suspect was informed of his or her rights; the length and nature of the suspect's detention and interrogation; and the use or threat of physical force against the suspect.

*United States v. Smith*, 606 F.3d 1270, 1276 (10th Cir. 2010).

Before questioning Defendant in the patrol vehicle, Officer Reichert read Defendant his *Miranda* rights from a "virtual" card Officer Reichert accessed online.[5] Upon arriving at DCPD headquarters, Defendant again verbally acknowledged his rights, and waived those rights by executing a form provided by Officer Reichert. *See* [Doc. No. 20-1]. No evidence suggests that, at any time, Defendant's capacity to determine for himself whether to speak with any officer was impaired in any way, and there is no indication that Defendant was coerced into waiving his constitutional rights. The recorded questioning of Defendant reveals that questions were asked in a conversational tone, and no threats or coercive tactics were employed. Further, Defendant was asked if he was thirsty and was provided with a bottle of water. The interrogation at DCPD headquarters was short, lasting only a matter of minutes. Under the totality of the circumstances, it is apparent that Defendant's choice to speak to the officers was uncoerced, and that Defendant displayed the requisite level of comprehension when waiving his rights.

The Court finds that Defendant made a voluntary decision to speak with the officers with full awareness and understanding of the information required by *Miranda* and the consequences of relinquishing his constitutional rights. Accordingly, Defendant's *Miranda* waiver was valid and effective.

---

[5] It is unclear whether Defendant claims that Officer Reichert's initial verbal statement of Defendant's *Miranda* rights omitted any information. Nonetheless, "no talismanic incantation is required to satisfy [*Miranda's*] strictures." *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (internal quotation, alteration, and citation omitted). Rather, "[t]he inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by *Miranda*." *Id.* "[W]arnings that convey the substance of the suspect's right are sufficient." *United States v. Hernandez*, 93 F.3d 1493, 1501 (10th Cir. 1996).

*Conclusion*

For these reasons, the Court finds that Defendant's incriminating statements were voluntary and that his waiver of *Miranda* rights was knowing, voluntary, and effective.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Statements During Custodial Interrogations Pursuant to *Jackson v. Denno* [Doc. No. 17] is **DENIED.**

**IT IS SO ORDERED** this 10th day of February, 2023.

*[signature]*

TIMOTHY D. DeGIUSTI
Chief United States District Judge